(40 Misc. Rep. 456.)

## MOUNT v. TUTTLE et al.

(Supreme Court, Trial Term, New York County. April, 1903.)

1. TESTAMENTARY TRUST—VALIDITY.

The validity of a trust in personalty created by will of a domestic testatrix is governed by the law of the state where the trust is to be administered.

2. SAME—INDEFINITENESS.

A domestic testatrix in 1880 made a will containing a bequest to the Protestant Episcopal missionary bishop for Utah and Idaho, in his corporate capacity, and to his successor or successors, to erect a church within the limits of his jurisdiction, to be the property of the "aforesaid Protestant Episcopal jurisdiction." The bishop named ceased to be the bishop of such territories in 1886, and before the death of testatrix, in

1889, such district was divided among three others, and territory from other states was taken into it. None of these districts had ever been incorporated. *Held*, that the trust was not maintainable, there being no corporation corresponding with "the aforesaid Protestant Episcopal jurisdiction."

Action by Charlotte A. Mount, administratrix of Maria B. Mount, against Daniel P. Tuttle and others. Judgment rendered.

The testatrix, by her will, divided her residuary estate into three parts, of which she gave one to her sister Charlotte, the plaintiff, one to her sister Susan, and the remaining one to the children of a deceased brother, Henry, or the survivors of them, share and share alike. At the time of making the will, Bishop Tuttle was the missionary bishop for Utah and Idaho, two territories comprising within themselves a separate missionary district. Down to October, 1886, Utah and Idaho continued as one missionary district, Nevada another, and Wyoming another. Then Bishop Tuttle ceased to be bishop of Utah and Idaho. Later Utah and Nevada were placed in charge of Bishop Leonard, and Idaho and Wyoming, another new district, was placed in charge of Bishop Talbot. In 1895 Utah and Wyoming were rearranged into two separate districts under Bishop Talbot, and the Western Colorado district was added to the Utah-Nevada district. In 1898 this Utah-Nevada-Western Colorado district was changed so as to include certain counties only in Nevada, and all of Utah, part of one county in Wyoming, and the Western Colorado district, all under the charge of Bishop Leonard, as the missionary bishop of Salt Lake. The Idaho and Wyoming districts were changed so as to be included in one new district, known as the "Missionary District of Boise," and comprised the southern and larger part of Idaho, the western and larger part of Wyoming, except part of one Wyoming county, included in the Salt Lake district; and the Missionary district of Spokane was made to include the northern part of Idaho, in charge of Bishop Wells. None of the districts were shown to have been incorporated.

Tillotson & Kent (Charles S. Martin, of counsel), for plaintiff.

Davies, Stone & Auerbach (Charles E. Hotchkiss, of counsel), for defendant Bishop Leonard.

Archibald M. Langford (William G. Low, of counsel), for defendant Bishop Funsten.

Robert G. Mead, Jr., for defendant Bishop Wells.

Baldwin & Boston (Charles A. Boston, of counsel), for defendant Tuttle.

Hamilton & Beckett, for defendants Clara J. Brown, Maria L. Mount, and Elizabeth Mount.

Hasbrouck & Johnson, by Lloyd Thompson, for the Attorney General.

Charles S. Martin, for defendants Charlotte A. Mount, individually, and Susan Mount.

BLANCHARD, J. This is an action for the construction of the will of Maria B. Mount, late of the city of New York, who died October 3, 1899. This will was probated in the Surrogate's Court of the

county of New York. It was executed December 22, 1880, and contained the following provision, which gives rise to the present controversy:

"After the payment of all my just debts and funeral expenses, I give, devise and bequeath all my estate both real and personal as follows: As a thank offering to Almighty God for all His benefits to me, I give, devise and bequeath unto the Reverend Daniel P. Tuttle, Bishop of Utah, the Protestant Episcopal Missionary Bishop for Utah and Idaho, in his corporate capacity, and to his successor or successors in office, the sum of twenty thousand $00/100$ dollars, in trust, nevertheless, to erect therewith at such place within the limits of his episcopal jurisdiction as he, his successor or successors shall select, a Protestant Episcopal church building to God's glory, and the further sum of five thousand $00/100$ dollars, in trust, nevertheless, to erect therewith, in the same place, a rectory for the rector or clergyman in charge of said church, to be the property of the aforesaid Protestant Episcopal jurisdiction."

Other bequests follow, and finally the testatrix disposes of her residuary estate.

The first question presented is the validity of the legacy, and in that connection it must be decided whether its validity is to be determined by the law of the state of New York, where the testatrix had her domicile, or that of the jurisdiction where the trust is to be administered. It is authoritatively settled in this state that the law of the state of the domicile of the testator must yield to that of the state where the trust is to be administered, although by the law of the latter jurisdiction the bequest is invalid, and even though it be valid in the former jurisdiction. In the case of Kerr v. Dougherty, 79 N. Y. 327, 342, Justice Miller, in delivering the court's opinion, thus states the law of this state in connection with this subject:

"The question discussed was the subject of consideration in the case of Chamberlain v. Chamberlain, 43 N. Y. 424; and it was held that the law of the testator's domicile controls as to the formal requisites essential to the validity of the will, the capacity of the testator, and the construction of the instrument. It was also decided that, where the will was executed lawfully, the validity of the bequests will depend upon the law of the domicile of the legatee, and of the government to which the fund by its terms is to be transmitted for administration, and the particular purposes indicated by the testator. It was also said by Allen, J., after laying down the foregoing rule: 'Whatever may be the law of Pennsylvania, a testator domiciled in that state cannot establish, by bequests of personalty to citizens or corporations of this state, a charity or trust to be administered here, inconsistent with the policy or the laws of this state. A gift by will of a citizen of this state to a charity, or upon a trust to be administered in a sister state, which would be lawful in this state, the domicile of the donor, would not be sustained if it was not in accordance with the laws of the state in which the fund was to be administered.'"

See, also, Congregational Unitarian Society v. Hale, 29 App. Div. 396, 400, 51 N. Y. Supp. 704.

Such being the case, the bequest cannot be sustained by reason of the enactment of chapter 701, p. 1748, of the Laws of 1893 of the state of New York.

The next question which naturally arises is, where is the trust to be administered? The answer to this is, "Within the limits of his episcopal jurisdiction"—that is, the jurisdiction of Rev. Daniel S. Tuttle as bishop for Utah and Idaho. But it appears that at the death of the

testatrix this jurisdiction no longer existed as a distinct diocese, but was comprised within three separate dioceses. The testatrix, however, intended, in my judgment, that the jurisdiction as it then existed, over which Bishop Tuttle presided, should get the benefit of her bounty. This comprised Utah and Idaho. What, then, was the law prevailing there? Certain of the statutes of Utah and Idaho are in evidence, and from these it would seem that the English common law was in force. Rev. St. Utah 1898, § 2488, in effect January 1, 1898; Rev. St. Idaho 1887, § 18. In the absence of these statutes, it would be presumed that the common law prevailed there. Zeltner v. Irwin, 25 App. Div. 228, 230, 49 N. Y. Supp. 337. Under the common law, the bequest is void for indefiniteness in the beneficiary. Tilden v. Green, 130 N. Y. 29, 45, 28 N. E. 880, 881, 14 L. R. A. 33, 27 Am. St. Rep. 487. As stated by Justice Brown in the Tilden Case, "the law is settled in this state that a certain designated beneficiary is essential to the creation of a valid trust." The learned justice further says:

"The remark of Judge Wright in Levy v. Levy, 33 N. Y. 107, that, if there is a single postulate of the common law established by an unbroken line of decisions, it is that a trust without a certain beneficiary who can claim its enforcement is void, has been repeated and reiterated by recent opinions of this court."

Prichard v. Thompson, 95 N. Y. 76, 47 Am. Rep. 9; Holland v. Alcock, 108 N. Y. 312, 16 N. E. 305, 2 Am. St. Rep. 420; Read v. Williams, 125 N. Y. 560, 26 N. E. 730, 21 Am. St. Rep. 748.

Counsel urge that this request should be sustained by virtue of the doctrine of cypres, which prevailed in the English court of chancery, and which it is claimed has been adopted by the courts of Utah; and the case of United States v. Late Corporation of Church of Jesus Christ of Latter-Day Saints, 8 Utah, 310, 31 Pac. 436, is cited as authority. It may be observed that this doctrine of cypres has been repudiated in this state (Tilden v. Green, supra), and there is no proof as to the doctrine being adopted in Idaho. It would seem that the doctrine of cypres was adopted to a limited extent by the courts of Utah, but not, in my judgment, to such an extent as to validate a bequest such as the one made by the testatrix in this case. The court, in its opinion, quotes with approval the following language from the opinion of the court in City of Philadelphia v. Girard's Heirs, 45 Pa. 9, 84 Am. Dec. 470:

"And this is the doctrine of cypres, so far as it has been expressly adopted by us, not the doctrine 'grossly revolting the public sense of justice' (Methodist Church v. Remington, 1 Watts, 226 [26 Am. Dec. 61]), and 'carried to the extravagant length that it was formerly' in England (Witman v. Lex, 17 Serg. & R. 93 [17 Am. Dec. 644]), by which an unlawful and entirely indefinite charity was transformed by the court or the crown into one that was lawful and definite, though not at all intended by the donor or testator; but a reasonable doctrine, by which a well-defined charity, or one where the means of definition are given, may be enforced in favor of the general intent, even where the mode or means provided by the donor fail by reason of their inadequacy or unlawfulness."

The only beneficiary stated in the will is "the aforesaid Protestant Episcopal jurisdiction." There was no corporation in existence which answered in any wise to that description, and there is a question as to whether that description applied only to the provision for a rectory,

or likewise to the provision for the church.  I fail to find any justifica-
tion in the claim that the testatrix intended the Domestic and Foreign
Missionary Society of the Protestant Episcopal Society in the United
States of America, a New York corporation, as the beneficiary.  By
the "aforesaid  *  *  *  jurisdiction" the testatrix evidently meant
the jurisdiction over which Bishop Tuttle presided (that is, Utah and
Idaho); but this jurisdiction ceased to exist before the will took
effect by the death of the testatrix, and the territory that was therein
comprised at the time of the making of the will was at the time of the
death of the testator divided among three jurisdictions, each of which
took in likewise other territory.  It is open to serious doubt whether
the bequests have not entirely lapsed.  It was so held in Brooks v.
Belfast, 90 Me. 318, 38 Atl. 222.

I have reached the conclusion that the bequests for the church and
rectory cannot be sustained, and that the bequests form part of the
residuary estate, to be disposed of in accordance with the terms of
the will.

Judgment accordingly.