(99 App. Div. 433)

### MOUNT v. TUTTLE et al.

(Supreme Court, Appellate Division, First Department. December 23, 1904.)

1. WILLS—TRUSTS—DESIGNATION OF BENEFICIARY.

A bequest in trust to T., Protestant Episcopal Missionary Bishop of Utah and Idaho, his successors, etc., to erect a church at such place within his episcopal jurisdiction as he or his successors should elect, with a further sum bequeathed to build a rectory for the rector of said church, was invalid under the laws prior to 1893 for its failure to designate a beneficiary.

2. SAME—TRUST ACT OF 1893.

       Said trust was not aided by Acts 1893, p. 1748, c. 701, providing that no charitable trust otherwise valid shall be deemed invalid by reason of the indefiniteness of the beneficiary, and authorizing the Supreme Court to control such trusts; as said act only relates to execution of trusts within the state.

       O'Brien and Laughlin, JJ., dissenting.

Appeal from Special Term, New York County.

Action by Susan Mount, administratrix, against Daniel S. Tuttle and others, to determine the validity of a bequest in trust by plaintiff's decedent. From a judgment holding the trust invalid, defendants appeal. Affirmed.

The question presented upon this appeal arises under the last will and testament of Maria B. Mount. The will was executed on the 22d day of December, 1880, and the testatrix died on the 3d day of October, 1899, unmarried, and without issue, a resident of the city and county of New York. The will was admitted to probate by the surrogate of the county of New York on the 20th day of November, 1899, the testatrix leaving real and personal property. By the will the testatrix made the following bequest: "As a thank-offering to Almighty God for all his benefits to me, I give, devise and bequeath unto the Reverend Daniel S. Tuttle, Bishop of Utah, the Protestant Episcopal Missionary Bishop for Utah and Idaho, in his corporate capacity, and to his successor or successors in office, the sum of Twenty Thousand $00/100$ Dollars, in Trust, nevertheless, to erect therewith, at such place within the limits of his Episcopal Jurisdiction, as he, his successor or successors, shall select, a Protestant Episcopal Church building to God's glory, and the further sum of Five Thousand $00/100$ Dollars, In Trust nevertheless, to erect therewith in the same place, a rectory for the rector or clergymen in charge of said church, to be the property of the aforesaid Protestant Episcopal jurisdiction." The plaintiff, as administratrix with the will annexed brought this action to secure a determination as to the validity of this bequest, making the Attorney General a party defendant, who appeared and answered, asking that the bequest be declared valid, and that the court make such determination as to its enforcement as should be proper. The court adjudged the bequest void, and from that determination this appeal is taken.

Argued before VAN BRUNT, P. J., and HATCH, PATTERSON, O'BRIEN, and LAUGHLIN, JJ.

Julian T. Davies (Charles E. Hotchkiss and Charles H. Tuttle, of counsel), for appellant Tuttle.

William G. Low, for appellants Wells and Funsten.

William H. Hamilton and Charles S. Martin, for respondent.

HATCH, J. It is not to be gainsaid that prior to the act of 1893 to regulate gifts for charitable purposes (Laws 1893, p. 1748, c. 701), in order to constitute a valid trust provision for a charity, there must not only be a trustee but a beneficiary capable of being designated, and who could enforce the trust provision. Owens v. Missionary Society, 14 N. Y. 380, 67 Am. Dec. 160; Williams v. Williams, 8 N. Y. 525; Bascom v. Albertson, 34 N. Y. 584; Tilden v. Green, 130 N. Y. 29, 28 N. E. 880, 14 L. R. A. 33, 27 Am. St. Rep. 487; People v. Powers, 147 N. Y. 104, 41 N. E. 432, 35 L. R. A. 502. In the present case it is doubtful whether a trustee is sufficiently identified, but, assuming that is not so, then, in order to carry out the terms of the trust created by the will under consideration, such trustee is required to designate the beneficiary; and until so designated the theory of the law was that no beneficiary exists. The very elements of a valid trust therefore fail in this case, unless the act of 1893 controls. I am of opinion that it

does not aid the matter, for its provisions only relate to the execution of trusts within the state of New York, and the statute can have no application whatever to the administration of trusts outside of the state. The statute does not confer power upon the Supreme Court to name a beneficiary, or enforce a trust over which it can have no control. The gift once removed from the state of New York, it would be impossible to have it administered by the courts of this state. The second section of the act of 1893 provides that the Supreme Court shall have control over gifts, grants, bequests, and devises in all cases provided for by section 1; that the Attorney General shall represent the beneficiaries in all such cases, and it shall be his duty to enforce such trusts by proper proceedings in this court. The case of Allen v. Stevens, 161 N. Y. 123, 55 N. E. 568, was one in which the fund was in this state for administration, and was placed by the statute under the protection of the Supreme Court, which could enforce it on the application of the Attorney General, and which could, notwithstanding an apparent indefiniteness and vagueness as to beneficiaries, select such beneficiaries under what is considered to be the re-establishment of the cy pres power by the act of 1893. As I consider that act as only operating in the manner indicated, the law remains, as to trusts created within this state and not to be executed here, as it was before the act of 1893 came into effect. In all the cases in which money has been transmitted from this state to foreign jurisdiction, there was a beneficiary named, and the subject of the right of that beneficiary to receive under the law of the jurisdiction to which the fund was remitted was held to be a matter which must not be considered by our courts. The case of Cross v. United States Trust Co., 131 N. Y. 330, 30 N. E. 125, 15 L. R. A. 606, 27 Am. St. Rep. 597, when its facts are considered, does not control here. The same may be said of Dammert v. Osborn, 140 N. Y. 30, 35 N. E. 407; and I think a careful reading of those cases will sustain this statement. In them the fund was here for administration.

The judgment should be affirmed, with costs.

VAN BRUNT, P. J., and PATTERSON, J., concur.

O'BRIEN, J. I dissent from the views expressed by the majority of the court. The cardinal rule in the construction and interpretation of will is to ascertain the intention of the testator, and, where it can lawfully be done, to effectuate it. It will be necessary, therefore, before discussing the legal questions presented, to ascertain just what the testatrix intended by this provision of the will. On October 4, 1866, long prior to the execution of this will, the General Convention of the Protestant Episcopal Church passed a resolution that "Montana, Utah, and Idaho are hereby constituted the jurisdiction of a missionary bishop," and on October 5, 1866, the general convention elected the Reverend Daniel S. Tuttle missionary bishop. On May 1, 1867, Bishop Tuttle was consecrated missionary bishop. On the 15th day of October, 1880, the general convention divided the missionary district of Montana, Utah, and Idaho into two missionary districts, of which the territories of Utah and Idaho constituted one and the territory of Montana the other; and provided that the bishop of Montana (Bishop Tuttle) be assigned to the church of Utah and Idaho and be styled "the

Bishop of Utah," with jurisdiction in Idaho. At the date of the execution of the will, therefore, Bishop Tuttle was missionary bishop for the territories of Utah and Idaho, and to this bishop the testatrix made the bequest. Recognizing the fact, however, that Bishop Tuttle might possibly cease, either by his death, or in some other way, to be bishop for these territories, the bequest was to him "in his corporate capacity and to his successor or successors in office." Thus we have a clear expression of intention that this sum of money was to vest in the individual or individuals who, at the time the bequest became effective, should be the bishop or bishops of the Protestant Episcopal Church of the territory over which Bishop Tuttle was the Protestant Episcopal Missionary Bishop; and the testatrix also clearly indicated the use to which the bequest was to be applied. Bishop Tuttle, his successor or successors, was to receive this bequest, charged with a trust, to use it for the erection of a Protestant Episcopal church and a rectory for the rector or clergymen in charge of said church, and the buildings thus erected were to remain the property of the Protestant Episcopal jurisdiction; but it is quite apparent that this last clause was not intended to affect the legal title of the property for the "Protestant Episcopal Jurisdiction" was neither a natural or artificial person capable of taking title to real or personal property. What was really intended was that the title to this property should vest in the bishop, his successor or successors, and should be used for a church and a residence for the rector or clergymen in charge of the church. The bequest, therefore, was one to the bishop of the diocese, in trust, to build a church and rectory; the buildings, when completed, to be used for that purpose.

I think that the bishop (or his successors or successor), who were the legatees, on purchasing property with this legacy and erecting thereon a church, would have a legal title to the property, which they could sell or convey. Assuming that this was a trust, the bishop, his successor or successors, being the trustees, the cestuis que trust being the church or those persons connected with the church residing in the locality in which the church was erected, we do not think that under the laws of this state such a bequest is void. It was held void by the learned Special Term, on the ground that, as stated by Judge Brown in Tilden v. Green, 130 N. Y. 29, 28 N. E. 880, 14 L. R. A. 33, 27 Am. St. Rep. 487, "the law is settled in this state that a certain designated beneficiary is essential to the creation of a valid trust." It is not necessary for us to determine whether this bequest would have been void under the rule thus stated, as that rule has been changed by chapter 701, p. 1748, of the Laws of 1893. Section 1 of that chapter provides that:

"No gift, grant, bequest or devise to religious, educational, charitable or benevolent uses, which shall, in other respects be valid under the laws of this state, shall or be deemed invalid by reason of the indefiniteness or uncertainty of the persons designated as the beneficiaries thereunder in the instrument creating the same. If, in the instrument creating such a gift, grant, bequest or devise, there is a trustee named to execute the same the legal title to the lands or property given, granted, devised or bequeathed for such purposes shall vest in such trustee. If no person be named as trustee, then the title to such lands or property shall vest in the Supreme Court."

The will in which this bequest is contained is that of a resident of this state, and it is here admitted to probate. The validity of a be-

quest contained in this will is to be determined by the law of this state, and the law of this state declares in express terms that no bequests shall be deemed invalid by reason of the indefiniteness or uncertainty of the persons designated as the beneficiaries. If this statute is applicable in the construction of this will, all doubt as to the validity of this bequest is removed.

The only objection taken by the respondents, or that was considered by the Special Term, was that there is no definite and defined beneficiary of the trust created, and that, as the trustee was a resident of another state or territory, and as the use to which the property was to be put was located in such other state or territory, the statute did not apply, and that the validity of the trust must be determined by the law of the states of Utah and Idaho, and that in determining the law of those states or territories the common law as it had existed in this state is presumed to be in force, and that, as the common law required the designation of a defined beneficiary, no valid trust was created. The provision of the act of 1893, to which attention has been called, is not confined in terms to trusts to be executed in this state, but applies to all wills over which the courts of this state have jurisdiction. Therein a rule of law is prescribed which enters into and becomes a part of every will, taking effect after its passage, and the validity of any will of real or personal property executed by a resident of this state, and which is to be here administered, is to be determined by its provisions.

That this is a bequest for a religious use is apparent from its terms, and by the statute no bequest or devise for a religious use shall be deemed invalid by reason of the indefiniteness or uncertainty of the persons designated as beneficiaries. It is quite true that the courts of this state have held that a bequest to a certain designated individual residing in another state upon a trust which was valid in such other state would not here be declared invalid, but the bequest would be transmitted to the legatee, to be applied to the purposes of a trust which could be enforced by the courts that had jurisdiction in the state in which the trustee resided and in which the trust was to be executed. The leading case establishing this principle is Chamberlain v. Chamberlain, 43 N. Y. 424, and there Judge Allen, in delivering the opinion of the court, said:

"That the corporation named was created for charitable purposes, and the bequest to it is for a charity, is not material, if the bequest is not for some other reason invalid. The courts of this state will not administer a foreign charity, but they will direct money devoted to it to be paid over to the proper parties, leaving it to the courts of the state within which the charity is to be established to provide for its due administration and for the proper application of the legacy."

The application of this principle decided the question there presented, but the learned judge further said:

"A gift by will of a citizen of this state to charity, or upon a trust to be administered in a sister state which would be lawful in this state, the domicile of the donor, would not be sustained if it was not in accordance with the laws of the state in which the fund was to be administered."

This case has been followed in other cases so far as it held that the courts of this state would not hold invalid a trust to be executed in another state which was valid by the laws of that state merely because, if executed in this state, it would not, under our laws, be valid. But,

we have been referred to no case which has enforced the dictum in Judge Allen's opinion which declared invalid a legacy upon a trust valid in this state, but which could not be enforced in the state in which the fund was to be administered. The validity of the provisions of a will is to be determined by the law of the state of the testator's domicile, and, if valid there, it will not be declared invalid in a state in which the trust is to be administered. In this case we are asked to declare void a bequest contained in a will executed by a resident of this state who was domiciled here, and which has been here admitted to probate, upon the ground that a trust was created with no definite beneficiary, although the express law of this state provides that no gift, grant, bequest, or devise to religious, educational, charitable, or benevolent uses shall be deemed invalid by reason of the indefiniteness or uncertainty of the persons designated as beneficiaries thereunder—a rule of law which we think is applicable to this will, and controlling as to its validity.

Chapter 701, p. 1748, of the Laws of 1893, was before the Court of Appeals in Allen v. Stevens, 161 N. Y. 122, 55 N. E. 568, where Chief Judge Parker, in speaking of this statute, says:

"Practical effect can be given to the provision that no devise or bequest shall be deemed invalid by reason of the indefiniteness or uncertainty of the persons designated as beneficiaries only by treating it as a part of a general scheme to restore to the courts of equity the power formerly exercised by chancery in the regulation of gifts for charitable purposes; for, in order to ascertain the class of persons who were entitled to the benefits of the trust, the rule formerly in force must necessarily be invoked by which the court ascertained as nearly as possible the intention of the testator, by decree adjudged who were intended to be the beneficiaries of the trust, and directed its administration accordingly."

This act should not be construed as limiting its operation to trusts which are to be performed in this state. The act provides that no gift, grant, bequest, or devise to religious, educational, charitable, or benevolent uses which shall in other respects be valid under the laws of this state shall be deemed invalid by reason of the indefiniteness or uncertainty of the persons designated as the beneficiaries thereunder in the instrument creating the same; and yet, in the face of this express mandate of the law, the court decreed this bequest void solely because the beneficiaries of a trust are indefinite. The testatrix died here. The estate is being administered here. The property disposed of by the will is within the jurisdiction of this state. Its validity depends upon the law of this state, and I think that by the law of this state the trust created by this clause of the will is a valid trust. The legatees are parties to this action, and the Attorney General, upon whom the statute of 1893 devolves certain duties in case of an indefinite trust, is before the court; and it seems to us that the courts of this state had jurisdiction to construe and enforce the trusts declared by this will, and, if the trusts are valid here, to provide for their enforcement. The act of 1893 (section 1) provides that:

"If in the instrument creating such a gift, grant, bequest or devise there is a trustee named to execute the same, the legal title to the lands or property given, granted, devised or bequeathed for such purposes shall vest in such trustee."

Here the bequest was to Bishop Tuttle as Protestant Episcopal Missionary Bishop for Utah and Idaho, and to his successor or successors in office. Prior to the death of the testatrix, Bishop Tuttle had ceased to be the missionary bishop for this diocese, and the diocese had been divided, so that at the death of the testatrix the state of Utah had become a portion of the diocese of Bishop Leonard. The state of Idaho had been divided, and Bishop Talbot was bishop of the diocese which included the southern portion of the state, under the style of "Bishop of Boise," and the defendant Bishop Wells was bishop of a diocese which included the northern portion of Idaho, under the style of "Bishop of Spokane." Since the death of the testatrix, Bishop Talbot has been succeeded by the defendant Bishop Funsten. After the death of the testatrix Bishop Leonard died, and the charge of his missionary district devolved upon Bishop Tuttle, he being at the time of the trial of the action in charge of that diocese.

I am inclined to the view that the legacy, being to Bishop Tuttle, his successor or successors, vested in those bishops who had charge at the date of the testatrix's death of the territory embraced within the diocese of Bishop Tuttle at the time of the making of the will. The language of the will is to Bishop Tuttle in his corporate capacity, and to his successor or successors. But a bishop is not a corporation, and the intention is manifest that the bequest should go to those who were at that time his successors as bishop of the territory over which he had jurisdiction. The bequest was made to the individual or individuals who were exercising the jurisdiction of bishop or bishops over these territories, and the person or persons occupying such position were the legatees to whom the bequest was made. In Matter of Sturgis, 164 N. Y. 485, 58 N. E. 646, the testator gave to "the select Men, or other municipal authorities of the East Parish of my native town Barnstable, in the county of Barnstable and State of Massachusetts, or their successors forever by what name soever such municipal authorities may at any time be known," a sum of money upon trust. It is true that the town of Barnstable was divided into two parishes, but that the selectmen were chosen for the whole town, and as such exercised the duty of the officers throughout the several villages making up the town. It was held that there was no bequest to the town, but that the trustees appointed were private citizens, and were to act as such, and that they were sufficiently designated; citing with approval the case of Inglis v. The Trustees of the Sailors' Snug Harbor, 3 Pet. 99, 7 L. Ed. 617. I think, therefore, that the trustees designated by the testatrix were the three bishops, the appellants in this action, who take by reason of their official relation as bishops of the territory over which Bishop Tuttle, named in this clause of the will, was missionary bishop at the time of the execution of the will. But, if there should be any question about these trustees, the act of 1893 (section 1) provides that "if no person be named as trustee then the title to such lands or property shall vest in the Supreme Court," and thus the Supreme Court could appoint a trustee to carry out the trust contained in this clause of the will. By section 2 of the

áct provision is made by which the Supreme Court shall, at the instance of the Attorney General, enforce such trust by proper proceedings. With much force it is contended that our courts have no power to appoint a trustee to execute or administer a trust in another state. I think, however, that under this provision of the statute the Supreme Court has power to provide by a proper judgment for the enforcement of this trust designating the proper beneficiaries. The court in this action has jurisdiction over the trustees. They are parties to the action, and upon a new trial the court could make such provision in its judgment as would carry out the intention of the testatrix. This judgment, being in an action in which the trustees are parties, could be enforced by the courts of any state in which the trust property should be located; the purpose of the judgment being to make certain the beneficiaries who are left uncertain by the provisions of the will. Such a judgment would give to those· beneficiaries, or any one interested in the enforcement of the trust, the right to institute any action in any jurisdiction to enforce it. It is apparent that this would not be administering the trust in a foreign jurisdiction. The object of this provision of the statute is to enable the court to supply any deficiency as to the identity of the beneficiaries contained in the instrument creating the trust, and, that ·having been accomplished by a judgment best adopted to carry into effect the intention of the testatrix, the proper administration of the trust can be decreed by the courts of the jurisdiction in which the trusts should be located.

I think, therefore, that the judgment appealed from should be reversed, and a new trial ordered, with costs to the appellants to abide the event.

LAUGHLIN, J., concurs.