its assets for the payment of their claims. Wilson v. Æolian Co.,
64 App. Div. 337, 72 N. Y. Supp. 150, affirmed 170 N. Y. 618, 63 N. E.
1123; Cole v. M. I. Co. et al., 133 N. Y. 164, 30 N. E. 847, 28 Am. St.
Rep. 615; Bartlett v. Drew, 57 N. Y. 587; Hurd v. N. Y. C. Steam
Laundry Co., 167 N. Y. 89, 60 N. E. 327; People v. Ballard, 134 N. Y.
269, 32 N. E. 54, 17 L. R. A. 737. This was not a purchase of prop-
erty from a corporation in the ordinary course of business. The pur-
chaser knew that the effect of the transfer was to wind up the busi-
ness of the old corporation without conforming to the statutory pro-
visions applicable thereto, which would have secured the appropria-
tion of its property to the payment of the claims of its creditors. As-
suming that Low and the other stockholder of the new corporation who
was not connected with the old were innocent, and that they believed
that the president of the old company would use the consideration paid
by Low in paying off the claims of creditors of the old company, yet of
this they took the risk. They could have protected themselves by an
inquiry with respect to the claims, and by seeing that the purchase
price, had it been the fair value of the property, was applied in settle-
ment of the claims of creditors; but, instead of doing this, they took
all of the property with the exception of these pastdue accounts, the
amount or value of which does not appear, and left the company strip-
ped of its assets, without other than a nominal consideration paid to it
and the creditors without remedy, except to follow this property in
their hands. This in law clearly constituted a constructive fraud
against creditors, and subjects the property in the hands of the new
company to a judgment of the court declaring and enforcing an
equitable lien of the creditors of the old company thereon, and sub-
jects the new company to liability to account for the property to the
extent necessary to satisfy the claims of the creditors of the old
company. Wilson v. Æolian Co., supra; Cole v. M. I. Co. et al.,
supra; Bartlett v. Drew, supra; Hurd v. N. Y. C. Steam Laundry
Co., supra; People v. Ballard, supra; Brum v. Merchants' Mutual
Ins. Co. (C. C.) 16 Fed. 141.

It follows, therefore, that the judgment should be reversed and a
new trial granted, with costs to appellant to abide the event.

PATTERSON, P. J., and HOUGHTON and LAMBERT, JJ.,
concur. SCOTT, J., concurs in result.

(118 App. Div. 139)

BREMER v. NEW YORK CENT. & H. R. R. CO.

(Supreme Court, Appellate Division, First Department. March 15, 1907.)

EMINENT DOMAIN—INJURY TO EASEMENT—DAMAGES—EVIDENCE—SUFFICIENCY.
    In an action for damages for the alleged maintenance and use by the
    defendant of a viaduct railroad structure opposite the premises of plain-
    tiff, evidence examined, and *held* insufficient to sustain a judgment for the
    amount of damages awarded.

Appeal from Trial Term, New York County.

Action by Catherine M. Bremer against the New York Central &
Hudson River Railroad Company. Judgment for plaintiff, and defend-
ant appeals. Reversed, and new trial ordered.

Argued before PATTERSON, P. J., and McLAUGHLIN, IN-GRAHAM, and CLARKE, JJ.

Ira A. Place (Alexander S. Lyman, of counsel), for appellant.
Bushby & Berkeley (James G. Bushby, of counsel), for respondent.

CLARKE, J. This action was commenced on the 5th day of July, 1901, for rental damages from February 16, 1897, to June 26, 1900, for the alleged maintenance and use by the defendant of the viaduct railroad structure in Park avenue opposite premises then owned by the plaintiff, situated on the northwest corner of Park avenue and 132d street. The lot has a frontage on Park avenue of 20 feet, and extends along 132d street 75 feet. The building is four-story brick with an extension in the rear, two stores on the ground floor, five dwelling rooms on the second floor, and six dwelling rooms on the third and fourth floors. The court found the rental value was depreciated from February 16, 1897, when trains were first operated on the structure, to June 26, 1900, when the premises were sold under foreclosure, in the sum of $1,785, or at the rate of $530 per year.

Prior to the viaduct improvement the railroad structure opposite the premises consisted of a depressed cut with retaining walls and surmounted by a parapet three feet high; said structure being about 63 feet in width from cut to cut of the retaining walls at the surface of Park avenue. Four tracks were laid in said structure; the base of rail being about 18 inches below the surface of Park avenue. The depressed cut bisected Park avenue between 115th street and the Harlem river, and entirely prevented access from one side of the avenue to the other except over bridges. The bridge for teams and pedestrians was at 129th street, and bridges for pedestrians only at 130th and 131st streets. The extreme width of the viaduct structure opposite plaintiff's south line was 62 feet 6 inches, and at the north line 62 feet. The space, therefore, occupied in the avenue by the new structure, is less than that occupied by the previous depressed cut structure. The extreme height of the structure opposite the premises is 22 feet 4 inches above the grade of Park avenue. The nearest portion of the structure is distant from plaintiff's premises 44 feet 10 inches at the south line, and 47 feet 8½ inches at the north line. The avenue opposite the premises, formerly occupied by the depressed cut, has been filled in, graded, and paved, and is now a portion of the surface of Park avenue. Charles Henry Hall was the common source of title of the plaintiff's predecessors in title, and the New York & Harlem Railroad, which corporation acquired from said Hall, then the owner of the bed of Park avenue in front of plaintiff's premises, by a deed, a strip of land 24 feet in width extending along the center line of Park avenue for the purpose of constructing and operating its railroad thereon with the right to slope any embankment or excavation of its railroad structure to the exterior lines of said avenue as then laid out on paper. The learned trial court excluded from evidence the said deed from Hall to the New York & Harlem Railroad Company. He also excluded chapter 702, p. 1674, of the Laws of 1872, chapter 907 of the Acts of Congress of Sept. 19, 1890 (26 Stat.

426), chapter 339, p. 694, of the Laws of 1892, chapter 548, p. 1149, of the Laws of 1894, chapter 613, p. 1468, of the Laws of 1898, and chapter 729, p. 1787, of the Laws of 1901, which exclusions were duly excepted to.

The claim in this case being confined to damages caused by a diminution of the rental value from February 16, 1897, to June 26, 1900, by reason of the change of the railroad structure from a cut 18 inches below the grade of the street which completely cut off one side of the avenue from the other to an elevated structure about 22 feet high, and a transformation of the surface of the street from a cut to a paved street allowing access in all directions, requires an examination of the evidence to see whether it sustains the judgment rendered. The best evidence of the rental value is the amount of the actual rents received. If the change from a surface to an elevated railroad inflicts damage upon abutting property, it would be natural to find that portion of the property especially invaded by the structure suffering therefrom. Although by this elevation of 22 feet the trains have been brought immediately opposite the windows of the living portion of the premises, it appears conclusively in the evidence that the rentals of such portion have not been affected at all, but that the same rents were paid for all the living apartments above the ground floor throughout this period of three years that had been paid theretofore for the same apartments. It does appear that the ground floor, access to which has now been made possible from all directions, has been vacant during this period, but it had also been vacant for more than two years prior thereto. It was formerly used as a liquor saloon, and the learned court has found as a matter of fact that the passage of the Raines law in 1896 injuriously affected the rental value of the corner store of the plaintiff's premises for saloon purposes. Since all the loss of rentals, as proved, is confined to the ground floor, and as the vacancies therein long antedated the period for which this defendant is here sought to be made responsible, and as there is another cause found by the court which injuriously affected the rental value of this ground floor property, it is impossible to find a proper basis in the evidence for the amount of damages awarded in this case.

This, taken with errors committed in the exclusion of evidence, leads to a reversal of the judgment and the ordering of a new trial, with costs to the appellant to abide the event. All concur.