Matter of the Judicial Settlement of the Account of CYRUS M. CRUM, as Surviving Executor of and Trustee under the Last Will and Testament of JOHN W. SCHULER, Deceased.

(Surrogate's Court, Rockland County, December, 1916.) ,

Trusts — validity of, in personal property — execution outside of the state — wills — Laws of 1893, chap. 701.

Wills — direction to executors to pay rest, residue and remainder of personal estate — bequests — Decedent Estate Law, § 98(3).

The statute (Laws of 1893, chap. 701) which provides that no gift, grant, bequest or devise to religious, educational, charitable or benevolent uses, in other respects valid under the laws of this state, shall be deemed invalid by reason of the indefiniteness or uncertainty of the persons designated as the beneficiaries thereunder, having been intended to modify the common law rule in its application to trusts for such uses created and to be executed in this state, has no application to a trust to be executed in a foreign state or country.

The validity of a trust in personal property which is to be executed outside of this state or in a foreign jurisdiction, when

the identity of the legatee has been ascertained, must be determined by the law of the place where the trust is to be executed.

Where, by the will of a testator who died in this state before the enactment of chapter 701 of the Laws of 1893, the executors were directed to pay the rest, residue and remainder of his personal estate to the " Wildenthierbach, Oberant Gerabron, Koenigrich Wurtemberg, the interest arising from the same to be used for the benefit of the poor of said place," but there is no competent or legal evidence that either the parish or village of Wildenthierbach has corporate capacity to accept and administer the trust for the benefit of the poor, or that such trust is valid under the law of Wurtemberg, one of the states of the German Empire, and it cannot be determined with reasonable certainty either from the will itself or from extrinsic evidence whether testator intended to bequeath the fund to said parish for the benefit of its poor, including the several villages or hamlets which compose it, or to the village of Wildenthierbach proper and to make its poor the object of his bounty, the bequest must fail for indefiniteness or uncertainty, and it must be held that testator failed to make a valid testamentary disposition of the residue of his personal estate, and he must be deemed to have died intestate as to that part of his property.

Testator having left no descendant, parent, brother or sister, nephew or niece, his widow who survives him became entitled under section 98 (3) of the Decedent Estate Law to the whole of the personal estate of which he died intestate, and she having since died intestate the residue of the personalty must be paid to the personal representatives of her estate.

PROCEEDING upon the judicial settlement of the account of a surviving executor and trustee.

Irving Hopper (Frank Comesky, of counsel), for accounting executor and trustee.

Frank Comesky, for executors of Philip Moeller, deceased.

John J. O'Connell and Frank Comesky, for next of kin and administrator of Margaretha Schuler, deceased.

11

Surrogate's Court, Rockland County, December, 1916.   [Vol. 98.

Frank W. Arnold (James T. Clark and Mortimer B. Patterson, of counsel), for Wildenthierbach.

I. Newton Williams, for Reversionary Estates Company.

McCAULEY, S.  The executor asks that the residuary clause of the testator's will be construed and the question of its validity and effect determined in this proceeding so that payment of the residue of the personal estate may be decreed to be made to the residuary legatee or to the person or persons who may be adjudged legally entitled to receive the same.

The parish village of Wildenthierbach, in the kingdom of Wurtemberg, Germany, claiming to be the residuary legatee named in the will, has appeared herein by counsel and, while joining in the request, alleges that the residuary clause constitutes a valid gift in trust and in perpetuity for the benefit of the poor of that village.

This village, by its answer, also alleges that the Reinhard trust is invalid in that it contravenes the statute relating to perpetuities, and asks that it be declared invalid and inoperative, and also alleges that the executors failed to properly administer the estate, and that the account now before us for adjustment is in certain respects erroneous.

The testator's next of kin and the personal representative of his widow, now deceased, have also appeared and affirm the invalidity of the trust created by the residuary clause; but neither they nor any other person in interest questions the validity of any other provision of the will, nor do they raise any question relating to the administration of the estate, or the correctness of the account.

Counsel have, therefore, consented that the decision

of the questions raised by the village be deferred until the question which involves the validity and effect of the residuary clause shall have been determined. The situation will be more intelligible if the facts are briefly stated.

The testator died September 22, 1887. His will bears date May 27, 1886, and was admitted to probate November 4, 1887.

The testator's wife, Margaretha, was given the possession and use of the homestead during her lifetime, and also the income from the personal estate. She survived the testator, but died May 16, 1889. The homestead, upon the widow's death, was given to Philip Moeller, absolutely; and the executors were thereupon directed to convert the personal estate, except certain articles specifically bequeathed, into money and to pay therefrom certain pecuniary legacies, and to set aside and invest the sum of $15,000, in trust, for the benefit of the testator's brother-in-law, John Reinhard, and Elizabeth, his wife, during their joint and several lives.

The ultimate beneficiaries of the trust are William and Henry Moeller, or the survivor of them, with the proviso, however, that upon the termination of the trust in favor of Reinhard and his wife the trustees are directed to pay the principal to Philip Moeller, their father, to be held by him, in trust, for their use and benefit, until they severally attain full age, whereupon the principal is to be paid to them in equal shares, or to the survivor, if one shall have previously died; and in the event of the death of both, during their minority, the principal is given to the father absolutely.

The will then provides: " The rest, residue and remainder of my personal estate to be paid by my executors to the Wildenthierbach, Oberant Gerabron,

Koenigrich Wurtemberg, the interest arising from the same to be used for the benefit of the poor of said place."

Two executors were appointed by the will, namely, Cyrus M. Crum and Philip Moeller, both of whom qualified and received letters testamentary thereof. The latter died June 18, 1915, having rendered no account of his proceedings, either as executor or trustee.

John Reinhard died January 15, 1892, but his wife Elizabeth is still alive. William and Henry Moeller long since attained full age and are still living. The trust, therefore, has not been fulfilled and its administration must continue, unless it be declared invalid, until the death of Elizabeth Reinhard. The residue of the personal estate is, however, now subject to final settlement and distribution.

The account now before us is presented by the surviving executor and trustee, who asks that upon its settlement and allowance he be permitted to resign as testamentary trustee, basing his request upon the fact that he is upwards of eighty years of age, and that he will hereafter be unable to properly perform the duties imposed upon him. It is also quite apparent that his health has become impaired, and I think the parties in interest recognize the fact, they having made no objection to his release, that the further administration of the trust by him may become an irksome task, and that it should be committed to younger hands. He will, therefore, be allowed to resign as trustee, upon complying with the provisions of the decree to be entered herein.

The residuary clause concededly creates a trust in personal property, and its validity is attacked upon various grounds. It is said by counsel who seek to nullify the trust, (1) that its validity and effect are to

be determined by the law of this state and by the law as it stood before the enactment of chapter 701, Laws of 1893, the testator's death having occurred in 1887; (2) that under the law of this state it is void for indefiniteness; (3) that the identity of the foreign municipality to whom the testator intended to make the bequest cannot be ascertained with reasonable certainty either from the will itself, or from the evidence adduced upon the hearing; and (4) that there is no evidence in the record that would justify a finding that either the parish or village of Wildenthierbach has corporate capacity, under the law of Wurtemberg, to accept and administer the trust, or that the trust is valid there.

Counsel who seek to sustain the trust insist, however, that the corporate capacity of the legatee and the validity of the trust are dependent upon and must be determined by the law of the place where the trust is to be executed.   I think the latter contention is correct.

Our courts had held with entire unanimity, prior to the enactment of chapter 701, Laws of 1893, that a testamentary trust in personal property for any purpose which was to be executed within this state was not enforcible, and was void if the testator failed to designate a beneficiary, or to designate or describe a class or kind of beneficiary to whom distribution was practicable, and that could with reasonable certainty be identified or ascertained, and it may be interesting if not indeed instructive to refer to some of the cases in which the principle was applied before the statute was enacted.

In the case of *Fosdick* v. *Town of Hempstead*, 125 N. Y. 581, a trust to be known as '' The Hewlett Fund '' was created by will in perpetuity for the support of the poor of said town.   The trust was not con-

Surrogate's Court, Rockland County, December, 1916. · [Vol. 98.

fined to the poor for whose support the town was under a statutory liability. The trust was held to be void not only because it was a trust for purposes which were not corporate or administrative, and, therefore, that the town could not take it for those purposes, but because the trust itself was void for want of any ascertained or ascertainable beneficiaries to enforce the same. The court remarked at page 592: "We are entirely convinced that a bequest at this day to a town in trust in perpetuity for the benefit of the poor of the town, not confined to those for whose support the town is under a statutory liability, is invalid for the want of an ascertained beneficiary."

In the case of *People* v. *Powers,* 147 N. Y. 104, the testatrix undertook to create a trust wherein the trustee was authorized to dispose of the trust property among such charitable and benevolent institutions in the city of Rochester as he might choose, and in such proportions as he might deem proper, and in which many similar cases are reviewed, and it was there held that the trust was not enforcible because of the failure of the testatrix to designate a beneficiary, or to designate or describe a class or kind of beneficiary to whom distribution was practicable, and that could with reasonable certainty be identified or ascertained.

In the case of *Fairchild* v. *Edson,* 154 N. Y. 199, the testatrix bequeathed her residuary estate to her executors, " to be divided by them among such incorporated religious, benevolent and charitable societies of the city of New York and in such amounts as shall be fixed or appointed by them, with the approval of my friend, the Rev. Dr. William R. Huntington, if living." It was held that the bequest was void for indefiniteness, being an attempt to create a trust which failed to designate the beneficiaries as a class

with such certainty as to enable the court to execute the trust in case the executors and the person named therein had refused to do so or were dead.

In the case of *Tilden* v. *Green*, 130 N. Y. 29, which led to the enactment of the statute of 1893, it was held that by an enforcible trust is meant one in which some person or class of persons have a right to all or a part of a designated fund and can demand its convey-ance or delivery to them, and in case such demand is refused may sue the trustee in a court of equity and compel compliance with the demand. In all of these cases the trust was to be executed within this state.

Chapter 701, Laws of 1893, it will be observed, pro-vides that no gift, grant, bequest or devise to religious, educational, charitable or benevolent uses, which shall in other respects be valid under the laws of this state, shall or be deemed invalid by reason of the indefinite-ness or uncertainty of the persons designated as the beneficiaries thereunder in the instrument creating the same. The purpose of this statute was, I conceive, not to abrogate, but to modify, the common-law rule in its application to trusts for religious, educational, charitable and benevolent uses which the courts had theretofore applied as a test of their validity to gifts and grants in trust to be administered in this state, namely, that there must be a beneficiary either named in the instrument creating the trust, or capable of being ascertained within the rules of law applicable in such cases. In my opinion, and it is sustained by authority, the statute was not intended to apply to a foreign trust, that is to say, one that was to be exe-cuted in a foreign state or country, no matter what its purposes were.

The act of 1893, as affecting gifts in trust for religious, educational, charitable or benevolent uses, received careful consideration in *Matter of Shattuck*,

193 N. Y. 446.   The residuary clause in that case was in the following language: ''All the rest, residue and remainder of my real and personal property, I give, devise and bequeath to my executor hereinafter named, in trust, however, the rents, profits and income thereof to be expended by him annually and to be paid over to religious, educational or eleemosynary institutions as in his judgment shall seem advisable, not more than $500, however, to be paid to any one such institution in any one year.'' It was held that the residuary clause was void for indefiniteness. The court, at page 451, says: '' The act of 1893 doubtless saves a trust from being invalid because the beneficiaries are indefinite and uncertain, but a trust may be so indefinite and uncertain in its purposes as distinguished from its beneficiaries as to be impracticable, if not impossible for the courts to administer. We make these suggestions for the express purpose of calling attention to the fact that there must be some limitation upon the power of a testator to make a valid trust, if he leaves his objects and purposes undefined and the beneficiaries indefinite and uncertain.'' *Matter of Robinson,* 203 N. Y. 380.

There can be no doubt, I think, that if the validity of the trust under consideration is to be determined by the principles laid down in these cases, and others that might be cited wherein the same principles have been applied, it must be held to be invalid and void. But our courts had applied a different principle in testing the validity of a trust to be executed outside of the state, or in a foreign jurisdiction, namely, that the law of the place where it was to be executed should govern.

In the case of *Mount* v. *Tuttle,* 99 App. Div. 433, it was held that the provisions of the act of 1893 only relate to the execution of trusts within the state of

New York, and that the statute has no application whatever to the administration of trusts outside of the state. It was accordingly held that the validity of the trust under consideration in that case was to be determined by the laws of Utah and Idaho where it was to be executed, and not by the laws of this state.

This case was affirmed by the Court of Appeals (183 N. Y. 358), and the court in its opinion reaffirmed the principle upon which the Appellate Division had based its decision. *Catt* v. *Catt*, 118 App. Div. 742.

In *Manice* v. *Manice*, 43 N. Y. 303, there was a bequest of $5,000 to the treasurer for the time being of Yale College, in New Haven, with a request that the trustees of the college invest the same in city or state of New York securities, or upon bond and mortgage on productive real estate in the city of New York, and accumulate the interest until the principal and interest should amount to the sum of $30,000, and thereafter use and apply so much of the interest of said fund, when required so to do, as would educate continuously one person, who should bear the paternal name of the testator and be a lineal descendant of his, in all their courses, collegiate and scientific. It was held that the college being authorized by its charter to take, the bequest was a valid gift of $5,000 to the college; and that the questions whether the bequest created a trust, and whether, if it did, such trust was legal, were to be determined by the courts of Connecticut, where the fund was to be administered.

The court, at page 388, says: " These are questions, however, which must necessarily be determined by the courts of the State in which the corporation legatee is situated. The fund is to go there, and be there administered. The will of the testator, so far as the courts of this State can act upon it, is fully executed, when the money is paid to the proper officer of the foreign cor-

poration; and there is no law of this State prohibiting gifts to such foreign corporations. Though the laws of the State of that corporation may permit it to hold and administer property in perpetuity, or to accumulate it, the local policy of this State upon that subject is not interfered with, by allowing property of our citizens to pass to such foreign corporation, and be administered by it in such foreign State according to its own laws.''

In the case of *Hope* v. *Brewer,* 136 N. Y. 126, the will directed the executors to sell the residue of testator's real property and to convert all of his residuary estate into money as soon after his decease as they could conveniently do so, and to pay over the proceeds thereof to three trustees, resident in Scotland, in trust, for the founding, endowing and maintaining of a charitable institution for sick and infirm persons in certain localities in Scotland, of which said trustees and their successors were to be the governors, and for the relief of such persons outside of the institution, they to be the sole judges as to who should be entitled to the benefits of the charity. In an action to determine the validity of these provisions, it was held that they were valid. The court, on page 139, says: '' If personal property is disposed of by will and in trust for charity, to take effect in another country, no good reason is apparent for insisting that a full compliance with the local law of the domicile, with respect to the form or duration of the trust, or the definition of the beneficiaries, is necessary to the validity of the disposition. Such laws are not generally regarded as limitations upon the power of the owner to transfer or transmit the property, but regulations applicable to the holding of property in the particular community, founded upon political or social considerations. In *Cross* v. *United States Trust Co.* (131

N. Y. 330) we held that a disposition of personal property by will and in the form of a trust, to be executed in this state, made by a person domiciled in another state, valid at the place of the domicile, was valid here, though the absolute ownership of the property was suspended for a period longer than is permitted by our statute. The principal ground of that decision was that our courts were required, under the doctrine of comity, to recognize the disposition of personal property made in another state as valid, if valid there, and not in its nature unlawful, or against public policy. In the creation of the trust our statute, in regard to perpetuities, was disregarded, but we held that it did not apply to a will made by a person who was domiciled in another state. In order to sustain this will, we must go a step farther and hold another but a kindred proposition, namely, that a disposition of personal property made in this state, by a competent testator, in a valid testamentary instrument, to trustees in a foreign country, for the purposes of a charity to be established in that country, is valid, although not in compliance with our statute or the rules of law in force here in regard to trusts and perpetuities, *providing it is valid by the law of the place where the gift is to take effect, and which governs the trustee and the property when transmitted there.*" And at page 143, the court further says: " Our conclusion is that, even if it be assumed that the bequest of the residuary estate to the Scotch trustees in trust for the purpose of founding and maintaining the hospital, should be held void under our law for the reason that the absolute ownership of personal property is unlawfully suspended or that the beneficiaries of the trust are not sufficiently specified or defined, still that does not render the disposition invalid as these objections

do not apply to a gift in trust to be administered in Scotland and perfectly valid there.''.

In *Matter of Huss,* 126 N. Y. 537, where there was a gift of personal property to a municipality situated in the German Empire, it was held, in accordance with the former adjudications of our courts, that the ability of the corporate legatee to take the testamentary bequest depended, not upon the law of this state, but upon the law of the foreign jurisdiction; that our laws do not prohibit either the bequest or the taking, and that in such a case the sole question relates to the legatee's capacity to take under the law of the foreign state or country wherein his domicile may be.

The act of 1893, having been intended to modify the common-law rule in its application to trusts for religious, educational, charitable and benevolent uses, created and to be executed in this state, and having no application to a trust to be executed in a foreign state or country, we think it clear that the validity of the trust under consideration must be determined, when the identity of the legatee has been ascertained, under the authorities above cited, by the law of the Kingdom of Wurtemberg.

We have examined with some care all of the authorities in this state cited by the learned counsel who seek to nullify the trust, but we fail to find amongst them any case holding that the validity of a testamentary trust created by the will of a citizen of this state, which is to be executed in a foreign state or country, must be determined by the law of this state.

This brings us to a consideration of the remaining questions, namely, the identity and corporate capacity of the residuary legatee, and the validity of the trust under the law of Wurtemberg.

The parties who challenge the validity of the trust have submitted no proof, but the parish of Wilden-

thierbach has presented the oral evidence of two witnesses, beside certain written or documentary proof, which must afford the basis for our decision.

The first witness was Paul C. Schnitzler, who is now fifty years of age. He is a native of Germany, and was educated there, having pursued a course of study at the University of Leipzig, covering a period of about two and one-half years, and which led to the acquisition by him of the degree of doctor of laws in 1887 or 1888, when he was twenty-two years of age. He was never admitted to practice in Germany, although qualified, but for a brief period he was acting district attorney of Heidelberg and Mosbach, was judge of the District Court at Lahr for ten months, and for a short time was clerk to the Appellate Division of the Supreme Court at Karlsruhe. He came to this country in 1893, was in due time admitted to citizenship, was admitted to the practice of law in this state, and has since resided and practiced his profession in the city of New York. He had traveled to some extent in the Kingdom of Wurtemberg, before he came to this country, and knew of a place there bearing the name of the residuary legatee, but it does not appear that he had ever visited the place or had any personal knowledge of it.

He testified that the Kingdom of Wurtemberg is one of the states composing the German Empire, that it has a common as well as statute law, upon both of which depend the legal capacity of such villages as Wildenthierbach to take and administer a foundation or trust for charitable uses, although, later, he testified that there is no statute giving the right to take directly. He was allowed, without objection, to produce and translate into English an entry on page 378 of a German publication known as Leffou's Book for the state and court of the Kingdom of Wurtemberg,

which purported to be published by the Royal Statistical Office, 1914, at Stuttgart. The entry was under the heading '' Government of the District of Gerabron,'' as number 34 of the Communities and was translated as follows: '' Wildenthierbach, parish village, 600 inhabitants; Mayor, Leonard Schurger; Evangelical Minister, Karl Traub.'' He said immediately following the translation that the village had been in existence for many hundreds of years, but did not state the nature nor the sources of his information. He testified that Wildenthierbach in 1887 was a corporation, a municipality, a community, by virtue of the Roman law which was adopted in the sixteenth century as the common law of the territory in which the village was located and that under the Roman or common law communities could take bequests ever since the time of the Roman emperors without restriction; and, therefore, during all the last century they had capacity to take either as legatees, or as heirs; that by heir is meant a person who takes the whole or a part of the estate; while a legatee is one who takes a definite specific object; the heir representing the personality of the testator, and, therefore, personally liable to pay all the indebtedness of the estate, whereas a legatee is not liable for debts.

The witness was shown a publication in German, which he described as the Government Gazette for the Kingdom of Wurtemberg for the years 1819 to 1824, being a collection of the laws in force there since 1806. He said the publication corresponded to our official Session Laws, and he translated the following paragraphs: Paragraph 1, p. 131, '' Of the administration of Communities: Each city, each market place, and each village shall constitute itself a separate community.''

Paragraph 3, same page: '' Each community has

the right to attend to all the affairs concerning said communities, and to administer independently the property of the community.''

Paragraph 21: '' The board of aldermen administers the property of the community.''

Paragraph 120, chapter 3 : '' The foundations existing in each community for the purposes of the church, school, or poor, including foundations established for such and similar purposes for the benefit of certain families, and other private purposes, in case the founders did not nominate other supervisors, are to be placed in the special charge of the temporal and ecclesiastical authorities of the place.''

Paragraph 121, same chapter: '' The board in charge of foundations consists of the priest of the place and the board of aldermen of the city or of the community.'' The remaining paragraphs of the chapter, the witness said, relate to the administration of such foundations, but are not material; and that during the year 1887 there were no other statutory provisions of the Kingdom of Wurtemberg which conflicted with the provisions quoted above. He also said later on that there was no statute in force in the Kingdom of Wurtemberg in 1887 relating to its capacity to accept a legacy, except those from which he had quoted, and that the parish village became a municipal corporation by virtue of a law passed in 1822, which was still in force in 1887.

The witness produced a volume, containing what he said was a decision of the highest court in the German Empire, corresponding to the Supreme Court of the United States, and relating to an estate in the Kingdom of Wurtemberg based upon the German common law, wherein it was held that a bequest of 450,000 marks '' for old poor men unable to work '' was a valid bequest. He also produced what he termed a

decision of the Supreme Court of the German Empire, handed down since 1900, in which it was held that a legacy of 600 thalers " for the poor of the city, the interest to be distributed every year " was declared valid.

These facts, and others to which no special reference is made, were testified to by the witness upon his direct examination, but the weight and the credibility of his evidence were much impaired upon his cross-examination. Much of the evidence he gave must have been excluded as hearsay and incompetent had proper objections been interposed and insisted upon.

The witness has never practiced his profession in Germany, except to a very limited extent, and having made no special study of German law and jurisprudence he cannot, I think, be said to speak with much authority upon the subjects to which his evidence relates.

The books or publications to which he was permitted to refer from time to time, and from which his quotations and translations were made, were not shown to possess any official character, nor were they introduced in evidence, thus affording an opportunity for careful examination and study. The witness simply referred to them, quoted or translated certain passages, but the books and publications themselves were in no sense made a part of the record, except that photographic copies of certain pages were admitted in evidence, and are now a part of the record before me.

The witness' reference to certain statutory laws, and to certain statutory provisions is subject to the same criticism. The statute itself, or an official copy, was the best and only competent evidence of its provisions; and, therefore, much of his evidence on that subject was hearsay and incompetent. See Code Civ. Pro. § 942. The reports, if such they were, from

which he quoted the two court decisions were not submitted to scrutiny or examination. It should also be observed that some of the publications which the witness made use of were issued before or after the testator's death, and we are left in doubt as to the origin and period of time covered by various passages quoted or translated.

I have studied the evidence of this witness with the greatest care, and it has failed to satisfy me that the parish village of Wildenthierbach, to which it relates, and which is the claimant here, has corporate capacity to accept and administer the fund for the benefit of its poor, or that the trust is valid under the law in force there.

Moreover, the questions have been rendered more difficult of solution by the evidence of the witness, Ernest Lehmitz. He is a German by birth and education, living in the city of New York, having migrated to this country about eight and one-half years ago, when he became, and has since been, a clerk in the German consul's office there. He speaks both languages fluently and is able to translate the German into English. He testifies that he recently examined at the Public Library of the city of New York two books in the German language, one of which was the Court and Hand Book for the Kingdom of Wurtemberg, for the year 1887, and the other of which was the Year Book for Statistics and Geography of Wurtemberg, published in 1887, and that he selected certain passages, and had the pages on which they appear photographed. The photographs when first offered in evidence were objected to but later the objection was withdrawn, and, counsel consenting, they were admitted and form a part of the record. It appears from the title pages that the books were pub-

12

lished for the government, at Stuttgart, and that they are official publications.

The witness testified that he had made a translation of the paragraph designated " 34 — Wildenthierbach," which appears on the page taken from the Court and Hand Book for 1887, and that Wildenthierbach is a village forming a parish, having a total population of 609; that there are several villages, hamlets or communities included in the parish, namely, Hachtel, Heimberg, Landthurm House, Schoenhof, Wolkersfelden, and the village of Wildenthierbach proper, the latter having seven councilmen, and a population of 299. These villages or hamlets, according to the witness Schnitzler, became corporate communities by virtue of the Roman law, and had authority to administer their own property, including foundations or trusts for the church, school or poor. The witness describes a parish as a community to which a certain number of villages belong, including the village itself. He said that the word " Gemeinden " means parishes, and that the words " Oberant Gerabron " mean " District of Gerabron." He also said that these words appear in the photographic exhibits, namely, " and each one with a separate poor law administration," showing that there is a separate administration of the poor law in and for each of the little villages or hamlets which comprise the parish.

Without further extending our reference to the proofs, I think it may be said that the evidence of these witnesses, and the publications to which they refer, without consideration of its competency, show that in 1887 there was a municipality or parish known as Wildenthierbach, in the district of Gerabron, Kingdom of Wurtemberg, having a total population of 609, and composed of several small villages or hamlets, including the village of Wildenthierbach proper,

Misc.]   Surrogate's Court, Rockland County, December, 1916.

having a population of 299; that the government of the parish was vested in the priest, burgomaster, and board of aldermen; that the small villages or hamlets constituted separate communities, each having a government of its own, and a separate poor law administration, the government of the village of Wildenthierbach being vested in seven councilmen.   There is, however, in my judgment, no competent or legal evidence which shows that either the parish or the village of Wildenthierbach has corporate capacity to accept and administer a foundation or trust for the benefit of its poor, or that a trust for that purpose is valid under the law of Wurtemberg.

Moreover, I am unable to determine with reasonable certainty either from the will itself, or from the oral or written evidence, whether the testator intended to bequeath the fund to the parish of Wildenthierbach, for the benefit of the poor of the entire parish, including the several villages or hamlets which comprise it, or to the village of Wildenthierbach proper, and to make its poor the objects of his bounty.   The designation of the foreign trustee as " Wildenthierbach " may apply either to the parish or to the village, and we are not allowed to speculate upon the question and to substitute our belief for the certainty which the law exacts in such cases.

The rule that where the legatee or beneficiary cannot be ascertained with reasonable certainty either from the language of the will, or from extrinsic evidence offered to show the testator's intention, the bequest must fail for indefiniteness or uncertainty has received the sanction of our courts in various cases.

I feel obliged, therefore, to find that the testator has failed to make a valid testamentary disposition of the residue of his personal estate, and that he must be

deemed to have died intestate as to that part of his property.

The claimant being without any legal status, the objections filed by it must fall and be considered as raising no further question which calls for consideration or decision.

The testator left a widow, but no descendant, parent, brother or sister, nephew or niece; and, therefore, the widow became entitled to the whole of the personal estate of which he died intestate, or failed to effectually dispose of by his will. Decedent Estate Law, § 98, subd. 3. She has since died intestate and, therefore, the residue of the personalty must be paid to the personal representative of her estate. A decree in accordance herewith may be entered upon the usual notice.

Decreed accordingly.