In the Matter of the Estate of HARRY MERRITT, Deceased.

Surrogate's Court, Monroe County, February 3, 1944.

*G. L. Buck* for Rochester Trust & Safe Deposit Company, as executor, petitioner.

*H. Z. Harris* for Herbert Merritt.

*J. J. Scully* for Mrs. J. M. S. Remington.

FEELY, S. This petition by the executor to compel a legatee to give a restitution bond before receiving a specified house with its furniture and equipment makes it necessary to construe the last will of this testator in order to ascertain what, if any, his intention was in this respect, before resorting to the general rules of the law, and particularly those relating to legal life estates, that may be applicable directly or by analogy to the peculiar state of facts presented herein, although the legacy appears to be one of a fee upon condition subsequent, with remainder over, rather than one of a legal life estate. Much of the discussion relates to the latter type and fewer cases in point on the former have been found.

By his will, dated May 9, 1943, about seven months before his death, testator put all his net estate in trust to pay the income to his wife and also provided in subdivision (b) of paragraph second thereof: " In that connection she shall be entitled to the possession of my home at 71 Paxton Road and the possession of and use of all furniture and equipment in connection therewith, without bond or security, during her natural lifetime." She died before he did. He had also provided by subdivision (c) that " Upon the death of my said wife, or in the event that she shall predecease me, I hereby give, devise and bequeath the said house and lot at 71 Paxton Road, with the furniture and equipment, (except the Prayer Rug hereinafter mentioned), to Mrs. Gray (Julia M. S.) Remington, residing at No. 2300 St. Paul Boulevard in the City of Rochester, but on condition that she live in said premises for a period of five years from the time she becomes entitled to receive it, or sooner dies. In the event that she does not live therein for five years, or should sooner die during said five year period, I hereby give, devise and bequeath said house and lot and furnishings to my brother, Herbert Merritt, residing at No. 29 Jewel Street in the City of Rochester." The other provisions in the will are not now pertinent.

It is clear that testator regarded the house and its furnishings, together with the land, as an undivided whole; that Mrs. Remington was to have the actual, physical possession of all that property as a unit; that the legacy was given directly to her, and not through the medium of a trust of any sort; and that testator made it obligatory on her to take and keep such possession for a time in order to carry out the condition on which the legacy was offered to her. She, apparently, has decided to accept the legacy, with the result that she has

become, as of the death of testator, the owner of the house and lot and the house furnishings under a title of ownership that is known in law as a conditional or base fee, which is defeasible if she should fail to remain in such actual possession of the property until the end of the period of five years, or until she should sooner die. If she should fail so to continue, the limitation over to testator's brother would forfeit all her rights in the premises and would raise his contingent remainder to an absolute fee with full ownership of the furniture and equipment, because he also has accepted the legacy by his participation herein. In the meantime both she and his brother have some rights of ownership in the premises.

Such combinations imply certain rights and duties as between the parties even though their respective rights are defeasible or contingent. As to the executor's right, if any, to demand security from the legatee, testator expressly provided that if his wife should outlive him, her right to possession of this same property was comparatively less restricted in respect of time or security. The will planned for her a life estate in the premises " without bond or security." In the alternate provision for the event of his wife dying before he did, testator restricted Mrs. Remington to occupancy for a period of five years, or less if she died meantime, as a condition of avoiding forfeiture of her title in fee to his brother. In a will so carefully and skillfully drawn, the executor has some ground to argue that the omission of the testator to speak of " bond or security " in this alternative case, as he had done just a few lines before in regard to the widow's somewhat similar use of the premises, should be understood to show that " testator entertained the diverse desire " here (*Matter of Leonard,* 143 Misc. 172, 185). It has been held where a testator in one part of his will demonstrated the ability of making a certain variety of gift in apt terms, that his use of a different mode of expression in another part would support the inference that testator had a diverse disposition in view (*Matter of Corlies,* 150 Misc. 596, affd. 242 App. Div. 703). However, from his silence in regard to Mrs. Remington's giving or not giving bond or security, the fairer inference seems to be that he left the legal relations of Mrs. Remington and his brother in the premises to be governed by the general rules of the law applicable to such or similar combinations, because had he specifically meant she should give a bond, he then had a present opportunity to say so as he had just spoken on that very subject.

Although this will did not create a legal life estate, properly so called, nor place any title in the executor, still there is enough resemblance to that class of cases to make the rulings in them of some help herein by the analogy such as it is. As a general rule, in cases where similar combinations of rights and duties in the same premises are involved, the person entitled only to use or to possession, owes the remainderman the duty to surrender the property in a state as good at the end of the use or possession as it was when received, except for reasonable wear and ordinary depreciation. Hence, the one enjoying exclusively the use, especially where, as here, the use was to be had only by actual possession of the property, has to make at his own cost ordinary, reasonable and necessary repairs, pay ordinary, current taxes and keep down interest on existing incumbrances; but insurance against loss is, generally, apportioned between the tenant and the remainderman. In this case each of these devisees of this specific property has an insurable interest, the cost of which for the period after acceptance of the legacy the executor cannot charge as an administration expense to the residuary legatee, to whom this specific property is not likely to fall in any event.

However, as to an obligation on the part of a legal life tenant to give a restitution bond, there has been some divergence in the rulings, although the cases fall into well defined groups. Where specific chattels other than animate things, or goods necessarily consumed in any use of them are bequeathed for use for a time, with a limitation over, they must be surrendered in kind at the end of the period, or their used value paid to the remainderman to whom in some decisions the tenant is regarded as standing in a somewhat fiduciary relation. This seems to have been the reason underlying a numerous group of cases holding the tenant could not obtain possession of the bequeathed property, where possession was not necessary to the enjoyment of the use, without first giving security for the safekeeping of the property and for final delivery of it by him or by the executor to the remainderman (*De Rivas* v. *De Hergues,* 12 N. Y. Week. Dig. 87; *Matter of Roffo,* 51 App. Div. 35; *Hodgman* v. *Cobb,* 202 App. Div. 259; *Scott* v. *Scott,* 6 Misc. 174; *Matter of Recks,* 112 Misc. 673; *Smith et al* v. *Van Ostrand,* 64 N. Y. 278, 281; *Covenhoven* v. *Shuler,* 2 Paige 122; *Matter of Gillespie,* 18 Abb. New Cas. 41; *Matter of Lowery,* 19 Misc. 83; *Matter of Fleming,* 51 Misc. 662; *Matter of Bacharach,* 138 Misc. 367; *Matter of Taylor,* 149 Misc. 705, affd. 242 App. Div. 608; *Matter*

*of Smith,* 170 Misc. 556; *Matter of Colwell,* 181 App. Div. 408; *Matter of Talmadge,* 32 App. Div. 10; *In Re Thomson's Will,* 43 N. Y. S. 2d 392; and note, 14 A. L. R. 1066).

In a few similar cases nonresidence may have been a decisive factor (*Matter of McDougall et al.,* 141 N. Y. 21). In the *Taylor* case (*supra*) the court held the fact that the will exempted the widow as sole executrix from giving bond did not free her from the duty of giving bond in her capacity as life tenant; but the contrary was held in *Matter of Beard* (169 Misc. 474), where the will exempted the life tenant executrix from giving " bond or undertaking as such executrix or trustee ".

In the cases of *In Re Morton's Estate* (32 N. Y. S. 2d 17) and *In Re Marshall's Will* (36 N. Y. S. 2d 571), the rulings requiring a bond seem to have gone against the weight of authority in that in each of these cases a bond was required, notwithstanding the legal life tenant had some rights in or over the principal of the legacy. Generally, a bond is not required where the tenant has some dispositive power or proprietary rights in or over the principal; as in a case where a power of disposition approximates a fee (*Matter of Haskell,* 19 Misc. 206), or more often where a right exists to consume some of the principal, as where income is insufficient for support (*Matter of Martha Niles,* 122 Misc. 17, affd. 211 App. Div. 826; *Matter of Limburger,* 128 Misc. 577; *Matter of Frost,* 179 App. Div. 431; *Matter of Woods,* 33 Misc. 12, affd. 61 App. Div. 587, affd. 168 N. Y. 640; *Getman* v. *McMahon,* 30 Hun 531; and see, also, *Leggett* v. *Stevens,* 185 N. Y. 70; *Smith et al.* v. *Van Ostrand,* 64 N. Y. 278, *supra; Bliven* v. *Seymour,* 88 N. Y. 469, 478; *Matter of Smith,* 170 Misc. 556, *supra; Matter of Potter,* 133 Misc. 17; *Matter of Grant,* 86 Hun 617).

" In a case like this where the beneficiary is something more than a life tenant and has power to use in his discretion some portion of the principal for his support he is as a general rule entitled to the custody of the fund without security " (*Matter of Frost,* 179 App. Div. 431, 435, *supra*). In *Livingston* v. *Murray* (68 N. Y. 485, modfg. 4 Hun 619) and in *Matter of Moran* (136 Misc. 615, 626), a tenant's power to appoint by his will was held not to be such an interest in the principal as to exempt from giving bond.

There is a divergent line in the mere " possession " group of cases wherein the tenant had no proprietary rights in or over the principal, and yet the courts emphasized the fact that the will, either expressly or by clear implication, showed

testator intended the legal life tenant to have, not only the use and income, but also the possession of the property itself. In one of those cases the tenant was said to have been made a trustee of the principal during the continuance of the life estate (*Matter of Richardson*, 135 Misc. 726, affd. 229 App. Div. 765). From those premises the conclusion was reached in some way that the tenant need not give bond; possibly, for the reason that before the enactment of section 169 of the Surrogate's Court Act in 1914 a trustee was not, in the absence of special showing, required to give bond. In the following cases the ruling was that the legal life tenant, having only a right of possession without any proprietary right or power, would not, ordinarily, be required to give bond in order to obtain such possession. (*Matter of Ungrich*, 48 App. Div. 594, affd. 166 N. Y. 618; *Matter of Rowland*, 153 App. Div. 327 [1912]; *Matter of Hamlin*, 141 App. Div. 318; *Matter of Beard*, 169 Misc. 474, *supra; Matter of von Kleist*, 265 N. Y. 422, revg. 240 App. Div. 436, which mod. 147 Misc. 416; *Matter of Fernbacher*, 17 Abb. New Cas. 339; *Getman v. McMahon*, 30 Hun 531.) In the case last cited the testator McMahon, in addition to a life estate in his farm, in lieu of dower, bequeathed to his widow also " the use and control " of all his personal property " on the farm and in the house " at the time of his decease, for her " to have to use and enjoy the same for her comfort and support ", during her life; and whatever of said personal property might be left at her death, the will gave to their daughter. The court held that as there was no proof of danger that said articles would be wasted, or otherwise lost to the remainderman, the widow should not be required to give security. In *Matter of Shipman* (53 Hun 511) the fact that the legal life tenant as executor was entitled to possession exempted him from giving bond; otherwise " the delivery of the principal to the life tenant is in the nature of a favor to which a court of equity attaches the just condition of adequate security." This ruling was followed in *Matter of Richardson* (135 Misc. 726, affd. 229 App. Div. 765, *supra*), where the court held that the attempt to make the same person both sole trustee and sole beneficiary results under the statute in a legal life estate (*Matter of Marshall*, 36 N. Y. S. 2d 571, 573) rather than in a valid trust. In *Matter of Lowery* (19 Misc. 83) the legal life tenant was required to give bond, notwithstanding she was one of three executors, and the will gave her, as legatee, " the possession, management and the control, and the rents, profits, use and income " for her life with remainder over to

others. *Matter of Bacharach* (138 Misc. 367, *supra*) is to the same effect; and it also takes into account that many of the securities were " non-legals." So, in *Matter of Richardson, supra,* the court considered it important to differentiate between the nature of a trustee's powers to invest and the indefinite powers of a legal life tenant where no express trust had been interposed. In some cases weight has been given to the fact that the property was such that it was, or was not, readily disposable. In *Matter of Strasenburgh* (136 Misc. 86) it was thought the estate might prove insolvent.

Those two important factors, to wit, one, the right to mere possession when necessary for use, and the other, some rights of ownership in the property itself or some dispositive power over it approximating ownership, even though those rights be defeasible or contingent, are found combined in a case somewhat more like the factual setup in this case in hand, in *Matter of Woods* (33 Misc. 12, affd. 61 App. Div. 587, affd. 168 N. Y. 640, *supra*), wherein testatrix devised her residence and its contents to certain legatees for life, provided they made it their residence; adding that if the devisees accepted the devise, they might appoint the remainder to their children; and that the devisees should have the residuary estate consisting of personalty; otherwise, the property should go over to others named in the will. The devisees having accepted the legacy, the court held they were not required to give bond to surrender even the contents of the house at the expiration of their life estates, since these legatees were entitled to the remainder of such personalty under the residuary provisions in the will. The court also held that the fact that their title might ultimately be defeated by breach of the condition subsequent was immaterial on the question of bond.

Counsel herein cited *Tyson v. Blake* (22 N. Y. 558). There, a bequest was made to a named legatee, but in case of her death without lawful issue her share was to be given to others. She " took under this will more than a life estate " (p. 562). There was nothing to show she might consume or spend the whole of the fund bequeathed to her. Had she left children they would have taken as her heirs. The court held her title was good, such as it was. Judge Comstock (p. 563) points out that " security was voluntarily given " by the legatee's general guardians to the executors. The latter, apparently, had advanced some of the principal. Hence, Welles, J., said (p. 561) that the bond was " such a one as the executors were entitled to require upon advancing " any of the principal to the legatee.

An impressive addition to the group of divergent implications found in legacies of mere possessive use was made by the final ruling in *Matter of von Kleist* (265 N. Y. 422, revg. 240 App. Div. 436, which mod. 147 Misc. 416, *supra*). There, a will probated in 1913, disposed of an estate consisting entirely of cash, mortgages and corporate stock. The use, income and profits of one third of the residuary estate was given directly to a daughter, to possess and enjoy, for her life, with remainder to her issue. The Appellate Division ruled the executor should have obtained adequate security from the daughter before delivering the corpus to her, adding as a particular reason that the executor was bound to assume that delivery of the corpus to the legal life tenant without adequate protection would " menace " the rights of the remainderman. The Court of Appeals reversed the Appellate Division and affirmed the decree of the Surrogate. In that case it did not seem to matter that the property was readily disposable. The court said the remaindermen " should look to their ancestor rather than to the executor for the preservation of their rights." Six years later a bill was introduced in the 1940 session of the Legislature with a note appended to the effect that a new section should be added to the Surrogate's Court Act, " so as to require a legal life tenant to furnish security in a proper case, thus clarifying the effect of the decision in Matter of von Kleist, 265 N. Y. 422 ". The new section was enacted in the following form: " § 169-a. *Security to be required from legal life tenant*. Whenever by or pursuant to any last will and testament a legal life tenant is entitled to the possession or control of property, such life tenant before receiving any such property into his possession or control, shall, if the surrogate so direct, furnish a bond with sufficient surety or sureties to account for and deliver the same to the successors in interest in such property, unless the terms of the will expressly declare otherwise." (Surrogate's Ct. Act, § 169-a, as added by L. 1940, ch. 829.)

In the preceding case law there had been some difference of opinion, both as to whether or not the Surrogate had any authority or discretionary power to dispose of such matters and also as to just what such a legacy of possession implied as stated above. Aside from clarifying the Surrogate's discretionary power, the new section seems to have settled the conflict in the pre-existing case law as to whether or not mere possession could be so broadly interpreted as to exempt from bond in every case. Such latitude appears to have been the unclarified " effect of the decision in Matter of von Kleist",

wherein no rights of ownership whatsoever were involved. There is nothing in the new section to indicate it was intended to alter the existing rulings on the effect in possessive use cases of the legatee having been given also rights of ownership, or like dispositive powers. The repeated phrase " possession or control " is appropriate to the conflict above mentioned. " Possession " may mean several things, or combinations of them: management, use, ownership. Originally it meant the act by which an owner evidenced himself as such; later it came to be used oftener in the sense of actually handling anyone's property, in the same sense as the word " manage " conveys. Judge TAYLOR, writing for the Appellate Division in the *von Kleist* case (*supra*), said: " possess " has been defined to have ownership with control and enjoyment in actual exercise, to enjoy in person, to have legal title to, to have and hold as property. Implicit in these definitions is the idea of ownership, of something greater than life tenancy, of something more than " holding " or " custody ". Those several implications have occasioned doubt and uncertainty. In the present section this word " possession " should be construed with " control " and " legal life estate ", having in mind the purpose of the *von Kleist* clarification.

The word " control " relates to authority " over what is not in one's physical possession " (*People* v. *Britton,* 134 App. Div. 275, 279). The original and main meaning of " control " is " contra-roll ", meaning the act of an overseer checking an account by a duplicate register, verifying by parallel evidence or experiment; and thus, derivatively, exercising a restraining or directive influence over a matter not in his hands. The word " control " does not imply any dispositive or proprietary power over or in the property under such superintendence. Hence, this phrase, " possession or control ", as used in section 169-a of the Surrogate's Court Act, appears to refer only to cases where the legal life tenant as legatee has either the right to handle or merely to oversee the handling of the subject matter of the legacy, but nothing more.

In thus clarifying the rule as to such merely " possession " legacies, the Legislature did not go so far as to impose the obligation of giving bond on the legal life tenant who had also some rights of ownership, even though contingent, in the property or some like dispositive power over it.

In the present case the legacy consists of a house and lot and the furnishings in the house, including some oriental rugs. The contents have been appraised at less than $2,000. The gross estate is abundantly solvent. We are not dealing here with

money or securities, or property as readily disposable. The property in question was intended by testator to be subject to ordinary wear and depreciation. The legacy is one of specific property and runs directly to the legatees without the intervention of a trust, either express or implied. This will created a conditional or base fee rather than a legal life estate; and although the condition is an actual occupancy by the devisee for a time measured by part of her life, still she is " something more than a life tenant ", as the court said in the *Frost* case (179 App. Div. 431, *supra*); and in such cases the great weight of authority is against requiring a bond, in the absence of a special showing of impending or probable loss.

On behalf of the first legatee, Mrs. Remington, it has been well claimed that the executor's duty is fulfilled upon delivery of the property to her. Thereupon, under the cases cited above, she becomes " a trustee " for the remainderman. The executor has no fiduciary duty in the premises after she takes possession; nor can the executor of a solvent estate, any more than the remainderman, ordinarily require of her a restitution bond before she is allowed to take possession of property specifically bequeathed in the absence of a special showing of impending danger or loss. No such showing has been made herein.

As between her and testator's brother, who is the remainderman, both can be regarded for present purposes as contingent owners and as tenants in common, excepting that one has some preferential right of actual possession. Both have the right to become owner absolute as the event may prove to be. There is a definite overweight of authority for inferring from a legacy of possessive use, with such proprietary rights or powers attached, that testator did not intend that, ordinarily, one of such co-owners should be obliged to give a restitution bond to his co-owner. The only obligation the law ordinarily imposes on a co-owner in actual, exclusive possession, is the payment of ordinary, current charges as aforesaid. The one so in possession is bound to handle the property with ordinary care, and not subject it to unreasonable use or to waste.

For the reasons aforesaid I conclude that the petitioner is not entitled to the relief sought, and that the devisee, Mrs. Remington, should be allowed to take possession of the house, lot and house furnishings without giving a restitution or other bond until the further order of the court in the premises.

On notice to counsel appearing, submit for signature and entry a decree in accord with this decision.