In the Matter of the Accounting of ROCHESTER TRUST AND SAFE DEPOSIT COMPANY, as Executor of HARRY MERRITT, Deceased.

Surrogate's Court, Monroe County, September 4, 1945.

*G. L. Buck* for executor and trustee, petitioner.

*H. F. Remington* for residuary legatee, respondent.

*H. Z. Harris* and *Abraham Edelstein* for heirs, respondents.

FEELY, S. On this final judicial settlement of the accounts of the executor-trustee the court is asked to construe the last will of this testator, dated May 9, 1943, for the purpose of ascertaining the intention and determining the legal effect of the act of this testator in having put his entire estate into an express trust, which in its residuary provision directs the residue be given as a building fund to an unincorporated chapel in England, which the heirs claim is a body incapable legally of taking a legacy, either directly, or through a trust.

The will became effective on testator's death on October 28, 1943. It named a local trust company as both executor and trustee, with full power to sell and convey real estate " for the purpose of carrying out " the will. The residuary estate is in personal property including a small parcel of land which the executor has not yet been able to sell. His brief suggests it was taken back in lieu of foreclosure. The will was skillfully drawn on the plan of putting the entire estate in trust, after the payment of debts and funeral expenses. These obligations are the subject of the first paragraph. By the " Second " paragraph all the rest of the estate, both real and personal, is given to the executor-trustee, in trust, " for the following uses and purposes ". These are detailed in subdivisions (a) through (h). Most of them are not presently pertinent. They include income to the widow for her life; but she died soon after the date of the will, and before the death of testator. There is also included a legacy of cash, and of a rug, a devise of specified real estate, discussed in a previous decision (182 Misc. 1026), and provisions

for care of the burial lot and the mausoleum. The last of those subdivisions is the focus of present concern. This subdivision (h) reads thus: " Upon the death of my said wife, or in the event that she shall predecease me, I hereby give, devise and bequeath all the rest, residue and remainder of my property both real and personal, to the North Bradley Baptist Church, North Bradley, Wiltshire, England, as a building fund toward the erection of a new chapel, which shall commemorate the memory of my father and mother, George Merritt and Eliza Merritt.'' Thus the entire net estate is put into a valid express trust, which lodged the legal title thereto in a local trust company as trustee. Clearly, the testator's main purpose was a charitable one, to create a free, public charitable use, in the form of a chapel (*Matter of Briglin,* 208 App. Div. 511), which is none the less a charitable use because of its being also a chapel memorial of testator's parents (*Matter of Teresa L. Atkinson,* 120 Misc. 186). The real beneficiaries are the persons comprising that portion of the public in Wiltshire which frequent the chapel in the area named (*Matter of Bell,* 141 Misc. 720). The group is definite. The fact that the group is unincorporated is immaterial; as is also the fact that the individuals, who may from time to time be benefited by this charity, are indefinite. The project is practical and feasible. It is also immaterial that the small parcel of real estate is included in the trust; the power of sale in trust contemplated an equitable conversion even if the suggestion be disregarded as to its being the equivalent of a bond and mortgage.

These conclusions are sustained generally by the cases cited above, and particularly by the following decisions, *Van De Bogert* v. *Reformed Dutch Church* (128 Misc. 603, 607, affd. 219 App. Div. 220) and *Matter of Winburn* (139 Misc. 5). In *Matter of Bell* (*supra,* p. 721) there were two similar legacies of money to a trust company to pay the income to a named, unincorporated church in Ireland, " for the minister's salary.'' These were held to be valid, and to be authority to the trust company to pay the income periodically to the minister for the time being in the respective churches.

The residuary provision in this Merritt will, considered by itself alone, is in the form of a direct legacy to the named chapel. When read in the context of the whole will this merely indicates that the draftsman followed a form in common use for the purpose of indicating a present gift, as of the death of testator, rather than at any later date. The phrase, as used here, is equivalent to directing the trustee to dispose of its legal title

to the residuary estate, either at the end of the life use of the widow, or at testator's death, if she predeceased him, to the remainderman, just as if he had added " to whom I now give, devise and bequeath the same." The heirs contend the much-repeated words, " I give, devise and bequeath ", must be construed in subdivision (h) as words of direct gift, apart from and independent of the main trust. This view is inconsistent with the initial legacy of the whole estate to the trustee in trust. The testator clearly intended that at the death of his wife, either before or after his own death, the trustee should devote the residuary estate to charity. The provision as to the wife's predeceasing testator takes this case out of the rule laid down in *Lougheed* v. *The D. B. Church* (129 N. Y. 211), although under this ruling, if the widow survived, and a devise were predicated on her death and ran to a religious society to be used as a parsonage, the devisee, although it was unincorporated at testator's death, but became incorporated during the life of the widow, would thereby become capable of taking title. In the *Bell* case (*supra,* p. 722) Surrogate WINGATE wrote: " * * * the phraseology employed would seem to indicate the creation of two successive trusts, namely, in the trust company and in the church. Whereas, however, the duties of the trust company are the usual express duties, the only possible duty of the church is the bare naked one of receiving the income from the trust company and immediately turning it over to the actual beneficiary of the trust, who is the minister of such church for the time being. As thus analyzed, it must be obvious that the second trust comes within the inhibition of section 93 of the Real Property Law [as a passive trust], which is equally applicable to trusts of personal property (*Matter of De Rycke,* 99 App. Div. 596), and that, as a result, the church cannot take any interest as trustee or otherwise in the subject-matter of the gift, namely, the income, and that it vests directly in the specified individual. Obviously, under section 12 of the Personal Property Law [The Tilden Act] as construed, a trust for the benefit of the minister of a particular church is a valid charitable trust. (*Matter of Kelley,* 138 Misc. 190, and cases cited.) * * * Whereas, the method of validating the legacy which is first above suggested is preferred, it is not at all clear that even were it necessary to construe the gift of income as one to an unincorporated association, this might not be upheld in itself. (*Van De Bogert* v. *Reformed Church of Poughkeepsie,* 219 App. Div. 220; 37 Yale Law Journal, 258, and cases cited.) "

Moreover, there is in these matters an established " distinction between an absolute gift and a direction to expend a given sum for a given purpose " (*Matter of Morris,* 227 N. Y. 141, 144), just as there is between an immediate gift and the manner of its application. Under the modern liberal attitude the courts could, if need be, readily find in subdivision (h) alone an implied trust in a charitable purpose such as this will expressly outlines as the erection of a new chapel for the inhabitants of a definite area.

Even if this residuary provision were to be construed as a direct, independent gift of personal property to the North Bradley Chapel, which is conceded to be an unincorporated association or religious society, still this legacy will be effectuated by New York courts if the fact appears to be that under the domiciliary law of England any such unincorporated association is deemed capable of accepting a like outland bequest, notwithstanding under New York law, if the chapel were located in this State, a direct legacy to it of money only, not expressed to be for a charitable purpose, would be invalid (*Matter of Idem,* 256 App. Div. 124, affd. 280 N. Y. 756, citing *Waller* v. *Childs,* 2 Ambl. 524; see, also, *Congregational Unitarian Soc.* v. *Hale,* 29 App. Div. 396; *Matter of Bullock,* 6 Dem. 335; *Matter of Weekes,* 85 Misc. 280; *Matter of Rathbone,* 170 Misc. 1030; *Hope* v. *Brewer et al.,* 136 N. Y. 126; *Mount.* v. *Tuttle,* 183 N. Y. 358; *Ely* v. *Megie,* 219 N. Y. 112; *Matter of Macaulay,* 173 Misc. 887; Note 2 L. R. A. [N. S.] 433) ; and the same is true as to a foreign corporation (*Matter of Crum,* 98 Misc. 160). A like rule is followed by the English courts as to foreign legatees.

The reciprocal courtesy or accommodation known as comity does not seem to have any such limitation; although "the intimate union of the states as members of the same great political family leads to a greater degree of comity toward each other than is usual between foreign nations." (5 R. C. L., Conflict of Laws, § 3, p. 910.) The rule appears to be almost universal that personal or movable property, and the rights and incidents of ownership thereof, are deemed to take on their essential character from the law of the domicil of the owner; and these features are recognized everywhere else. Thus in *Matter of Huss* (126 N. Y. 537) the ability of a German municipality to take a legacy was held to depend on the law of the legatee's domicil. A like ruling was made on a trust in personal property for the benefit of citizens in Germany (*Matter of Crum,* 98 Misc. 160, *supra*); and in *Matter of Stephani* (164 Misc. 240) a bank in Germany was recognized as the trustee

of a charitable trust to be carried out in that country. In *Kurzman* v. *Lowy* (23 Misc. 380) the chief magistrate of Berlin, Prussia, was likewise recognized. (See, also, *Matter of Miller,* 149 App. Div. 113.) In regard to a bequest to a priest in Syria for masses, it has been said "nor does it matter that the funds are to be expended in a foreign country. (*Mount* v. *Tuttle,* 183 N. Y. 358.) " (*Matter of Stephen,* 150 Misc. 27, 29.)

If Mr. Merritt had made this will in England when it bears date, that is about six months before his death, we may assume this legacy to charity could, as counsel for the heirs urged, at one time be questioned there under the Mortmain & Charitable Uses Act of 1888 (51 & 52 Vict., ch. 42), which placed a limit of one year, similar to the obsolete limit in New York of two months, but the inference would not be warranted that the legatee could not take under an American will, nor under an English will made more than one year before death. It does not appear herein whether or not that limitation was not in force in England at the date of this will. Moreover, the courts both here and in England have held that such statutes have not any extraterritorial effect. Our Court of Appeals, quoting from an English case, said: " ' The fund being to be administered in a foreign country is payable here, though the purpose to which it is to be applied would have been illegal, if the administration of the fund had been to take place in this country. This is exemplified by the well-established rule in cases of bequests within the statute of mortmain. A charity legacy * * * is good and payable here if for a charity in Scotland.' " (*Chamberlain* v. *Chamberlain,* 43 N. Y. 424, 434; and see *Hope* v. *Brewer et al.,* 136 N. Y. 126, 137, 140, *supra; Healy* v. *Reed,* 153 Mass. 197; Note 10 L. R. A. 766; *Cross* v. *U. S. Trust Co.,* 131 N. Y. 330.)

" Whatever may be the opinion of the court ", wrote Surrogate WINGATE, " respecting the unwisdom or lack of logic of such a position, it is firmly established in our law that an unincorporated association is incapable of taking and holding personal property " (*Matter of Howells,* 145 Misc. 557, 566) unless the case comes within the provisions of the Tilden Act, (Personal Property Law, § 12); but the members of such legal nonentities could acquire equitable rights even in lands (*Baldwin* v. *Humphrey,* 44 N. Y. 609, 616; *Barker et al.* v. *White et al.,* 58 N. Y. 204).

The general rule was originally a consistent part of the feudal tenure of land; and at some later time, apparently, it became extended to personal property also. In New York, in both

respects, the rule has long been applied in all cases which, as Mr. Davids points out (2 Davids on Law of Wills, § 602), are " not expressed to be for charitable purposes." On behalf of the heirs it is claimed that under English law such an unincorporated body as the North Bradley Chapel cannot take this legacy now in question.

Only two American cases have come to the attention of this court in which the legal status here, at common law, of the churches in England is discussed, and both relate to the established church, or " Church of England ", as the status of its churches here was recognized, according to the common law, before the Revolution of the Colonies. The Town of Pawlet, Vermont, brought ejectment against Clark (*The Town of Pawlet* v. *D. Clark & Others,* 9 Cranch [U. S.] 292), who held under a prerevolutionary grant of land for " *a glebe for the Church of England as by law established* ". A glebe is a grant of land belonging to or yielding revenue to a parish church. STORY, J., ruled that at common law the Church of England, in its aggregate description, is not deemed a corporation, and cannot receive a donation *eo nomine;* but a grant to a church is, however, good at common law, and vests title in the parson and his successors; and in like manner, if a gift be of chattels to parishioners, who are no corporation, it is good; and the church wardens shall take them in succession for the gift is to the use of the church; but as regards land a voluntary society of Episcopalians within a town, unauthorized by the Crown, could not entitle themselves to the glebe.

In *Terrett & Others* v. *Taylor & Others* (9 Cranch [U. S.] 43, 45) the vestry of an Episcopalian Church in Virginia successfully challenged the constitutionality of what seem to have been anti-Tory and taxation acts passed by the State after the Revolution, divesting the church of land previously acquired. For the purposes of the case, STORY, J., said " it would make no difference whether the Episcopal church were a voluntary society, or clothed with corporate powers ". Even though the religious bodies in England outside the established church did not have the legal approval of the Crown, and the status derived therefrom, still, with the exception of the " papists " before the enactments of 1829, charitable bequests to those other bodies have been sustained; and since the acts of 1829 a legacy to a Roman Catholic chapel was directed to be paid to the trustees for necessary repairs of the chapel, in *De Windt* v. *De Windt* (23 L. J. [Ch.] 776). Baptists were concerned in the earlier case of *Attorney-General* v. *Cook* (2 Ves. Sen. 273), where after a

bequest to a named person, the minister of a Baptist meeting-house, certain other premises were devised away, charged with an annuity of ten pounds " to the minister belonging to the meeting-house ". This was held to be a valid charitable bequest, like that to Quakers, for the ministers in succession. In 1930 it was held in Chancery that a gift " to the Roman Catholic Church for the use thereof " is a good charitable bequest (*In Re Schoales,* [1930] 2 Ch. 75; *Simpson* v. *Barnes,* 99 L. J. [Ch.] 380). This court has not been able to ascertain whether that body is a corporation, which seems unlikely to be the fact.

So, a trust of property in favor of a parish, or the parishioners of a parish forever, can only be upheld on the ground of its being a charitable trust (*Attorney-General* v. *Webster,* 44 L. J. [Ch.] 766).

Trusts, and gifts also, for charities in a particular area have been held not to be void for uncertainty (*M'Phee's Trustees* v. *M'Phee,* 1912 Sess. Cas. Sc. 75; *Commercial Union Assurance Co.* v. *Scottish Corporation,* 34 Times L. R. 469).

So, a gift is valid as a charitable use that was given to enable persons professing the Jewish religion to observe its rights (*Straus* v. *Goldsmid,* 8 Sim. 614); and likewise a gift for the assistance or support of congregations of designated religious sects (*Shrewsbury* v. *Hornby,* 5 Hare 406).

That an unincorporated charity has status in England to sue, or be sued, is implied in a ruling, on the proper form of pleading in such cases, in *Morton* v. *National Church League* (85 L. J. [Ch.] 166); where a fund was bequeathed to a church union, and also to a nurses' benevolent institution, both of a named place; and the court, after having identified the bodies intended by the testator under the names used in the will, added this ruling, that where an unincorporated charity is sued, the proper practice is to sue a named person, being the treasurer, or secretary, or other responsible officer, " on behalf of " the charity, naming it. This was by virtue of an amendment of the common law " In England and in this country, chiefly by statute " (*Kirkman* v. *Westchester Newspapers, Inc.,* 261 App. Div. 181, 183), whereby it was no longer the rule that an unincorporated association as such could neither sue nor be sued, except in the names of each and all of its members. Originally, the group did have rights and duties, but only in severalty; and this status still persists, and is recognized in equity courts.

Judicial notice under section 344-a of the Civil Practice Act, was taken of the English ruling made in *Waller* v. *Childs,* as exhibit 19 herein, which Judge SEARS cited in the *Idem* case

(256 App. Div. 124, *supra*). The case noticed was decided in Chancery in 1765, and was reported by Ambler (2 Ambl. 524, *supra*). There an heir sought to set aside a charitable bequest, whereby the net residue of an estate was bequeathed and devised to two trustees to pay the interest on the same to testator's brother for his life, and after his death, " the trustees should stand possessed of the principal money, in trust for the augmentation of the charitable collections which should be then after made for the benefit of poor dissenting ministers of the Gospel residing and living in any of the counties of *England,* to be paid to the treasurer or treasurers of such charitable societies or fund for the time being, for that purpose, as the major part of them should direct or appoint."

The executors set up in their answer " That the protestant dissenters in this kingdom are distinguished by the several denominations of *Presbyterians, Independents* and *Baptists;* and that the dissenters of each of those denominations, living in and near *London* and *Westminster,* have a separate society, consisting of persons chosen out of their respective congregations, which society is called by the name of the managers of the fund for the support of the poor Dissenting Ministers of that denomination in the country; and that there are charitable collections annually made at the said meeting-houses, belonging to most of the several congregations belonging to each of the denominations, in and about the cities of *London* and *Westminster,* and the money given at such collections is constantly and regularly carried to the said fund, and paid into the hands of the treasurer thereof for the time being; and that the same is disposed of by the said managers of such funds, for and towards the support of poor dissenting ministers in the country, whose annual subscriptions from their own congregations are so small as not to be sufficient, in many cases, to support themselves and families with the common necessaries of life " (p. 525).

The court held the bequest good, on the words of the will; and without hearing counsel for the charities, placed the ruling on the broad ground that the bequest was intended for all the ministry in general. Although this report does not say so, the clear implication is that the dissenters and their subordinate managers of this fund, and the " ministry in general ", were each bodies that were not incorporated.

The objection that the legatee was not an incorporated body, nor a charitable institution, was considered in *Armstrong* v. *Reeves* (25 Law Rep. Ir., 325), where money was bequeathed to an English antivivisection society in Germany for the protection

and kind treatment of animals. In holding there were certain and also charitable purposes, and that the legacies were valid, the court said it was a matter of importance that the will declared these legacies to be "payable to the Treasurer for the time being " of the societies named.

A survey of the acts of Parliament has not disclosed any statutory requirement that such bodies must become incorporated in order to be capable of taking bequests like the one now in question. On the English cases cited above, it appears the North Bradley Chapel, despite the fact it is not incorporated, is legally capable of taking Mr. Merritt's bequest, even in the theory that the bequest is a direct one, independent of the basic trust on which his last will is framed. However, as stated above, this court holds this will primarily presents an all-inclusive charitable trust in the petitioner herein, in which the words claimed by respondents to show a direct gift are merely descriptive and directive; and that they serve to emphasize the gift of the residuary estate as one presently bestowed, as of testator's death, through the trust, and subject to a projected life use, which lapsed.

No satisfactory ground has been found for a decree that testator must be deemed to have died intestate as to the greatest part and bulk of his estate. Testator's heirs have not established any interest in any part of this estate.

My conclusion, therefore, is that the objections of the heirs should be dismissed, and that the petitioning trustee can obtain a valid discharge and full quittance by paying this fund over to the officers of the North Bradley Chapel for the purposes indicated in the will; and when vouchers showing such payment to have been made, are filed, an order may be entered discharging the accounting executor-trustee in the premises.

On notice, submit for signature and entry a decree in accord with this decision.